The next case this morning is Potts v. Center for Excellence. The case is 17-1143. Mr. Mark, if we're ready to proceed, if you could move right along, please. Good morning. I'd like to reserve five minutes of time, if I may. May it please the Court, Brandon Mark, on behalf of Appellant W. Potts. Ms. Potts comes before the Court today to ask the Court to reverse the District Court's dismissal of her complaint based on the conclusion that the anti-retaliation provision of the False Claims Act unambiguously excludes former employees from its protection. What is the relief you ask of us? Specifically, we ask you to reverse the District Court's dismissal and its specific legal conclusion that the statute does not protect former employees, which is the sole basis for the District Court's dismissal in this case was based on a legal conclusion, apparently no conclusion. And do you allege that the contract extends the Act in some way? I'm sorry? Do you claim, assert that the contract extends the Act in some way? The contract between the school and my client? Yes. No. No, the contract is... So whether the Act extends to previous employees is purely a matter of law and not a matter of even an effort to extend the contract to previous employment. I guess if you read it prospectively, it would be to subsequent employment. So the contract between the parties was basically a severance agreement, and so it didn't talk about... Actually, what it said is that my client was not allowed to make any complaint to any regulatory or governmental body, which is the hook that they've used to sue my client for going to the center's accreditor, which is a quasi-governmental entity that oversees the educational quality of the schools here. And so, yeah, the contract itself is independent of whether or not the statute applies here. If there was no statute or, pardon me, no contract, we would still argue that she would be protected. So, for example, if the contract didn't exist, she had still made the complaints to the accreditor. Since we're going to be talking about the Act, what is the precise provision in the Act that you rely on to claim you have a right under the Act? Okay, so the... What's the statutory section in the language, please? Okay, so the statute is 31 U.S.C. 3730H, and then there are three subparts under H. We're focused mainly on subpart 1. Before we get to 1, following up on Judge Lucero's question, subparagraph 2 concerns relief. Correct. And that's when there's a violation. Are you contending that your client is due relief under paragraph 2, and if so, what relief? By what language? Yes, she is. So by the language of... So the statute talks about all relief necessary, so we have specifically asked for injunctive relief, specifically the dismissal of... Oh, so now you're asking for more than just a blanket reversal. Now you're asking... You're amending the answer to my question. I thought your question was what relief I was seeking from this Court, not from the Court below. I apologize. I misunderstood. Yes. From the Court below, we are seeking relief in the form of injunction, injunctive relief to dismiss, in order of dismissing the State court claim that we believe is retaliatory. Where are you reading in H. 2? I see the relief being reinstatement with the same seniority status, two times the amount of back pay, interest on back pay, compensation for special damages as a result of the discrimination, which ties back to 1 and is employment-related. She doesn't work there. How does any of this relief fit? Well, so first of all, as we've explained in the brief, the provision begins with all relief, shall include all relief necessary, and we believe that naturally extends based on precedent that this Court and the Supreme Court has relied on. So you're asking us to extend the statute, in consequence of my first question, that you're asking us to give some expansive meaning to this statute. That's why I'm trying to hold you to the statute on my questions. Okay. It seems to me in your answers to Judge Phillips, you're asking for all kinds of stuff that I couldn't find in the statute. Well, let me go to it. It also includes special damages. That's been recognized. And special damages can include emotional distress. Courts of appeals across the country have found that the special damages allowed under H. 2 include emotional distress damages. But it's not a standalone. It's not just if you have special damages, raise your hand. It's special damages sustained as a result of the discrimination. And in paragraph 1, it says discrimination against the person in the terms and conditions of employment. So there's a big anchor on that ship. How do you pull it on board? Well, so first of all, we don't believe that the term discrimination in terms of conditions of employment defines the scope of the statute. And there's a lot in the briefs about sort of the proper statutory construction of that term. Specifically, the Supreme Court and this Court has often followed the rule of last antecedent, also called the rule of last reasonable reference. And that rule says that the qualifying term, that other acts of discrimination in the terms of condition of employment, that that qualifier in the terms of condition employment only modifies the last term in that list and does not modify all the other terms in that list. Also, the modifier terms and conditions of employment was addressed by the Supreme Court in Burlington. And the Court there didn't say that that term had a temporal limitation. It said that it required an employment nexus. And in this case, there is an employment nexus because my client made a complaint to a governmental or quasi-governmental body about her former employee. So there is an anchor in the employment context here. But that's also not required by the statute. The statute doesn't use the term employer anywhere in it. It talks about employees, contractors, and agents. And the Robinson, and this is the point I would like to get to and emphasize the most, is that the Supreme Court in Robinson unanimously reversed the Fourth Circuit in finding that Title VII's statute was unambiguous and unambiguously excluded former employees. It also uses the introduction discriminates against. The only thing that is illegal in the Title VII's anti-retaliation provision is discrimination, which the Court held can still encompass former employees for action. Roberts. With Judge Phillips' consent, may I ask for an answer to my first question? Sure. What is the precise language of the statute upon which you rely to sustain your position that the statute covers former employees as opposed to employees under Section 370-H? Okay. So, and I'm going to go right to 3730-H. And I'm going to go right to the Supreme Court's rationale in Robinson. So it is. Let's go to the language in the statute first. Okay. And then to the rationale of the Supreme Court modifying the language. And, of course, Robinson is a Title VII case. So that's why we're interested. Sure. Ms. Zero and I are interested in this paragraph. Sure. Precise language. Okay. So the first one is, let's start with H-1. All right. It protects against discharge. So employees who are discharged are protected under the statute. As Robinson held, discharged employees were necessarily former. Give us the language. So it's H-1, and it says about midway through, if that employee, contractor, agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment. So the first language is discharged. Just a second. Potts resigned, right? She did. And does this cover resignations? Well, so we're not here on the resignation, but, yes, because it was constructive discharge. In fact, the Wyoming Department of Labor found that she had been constructively discharged. She resigned because she was asked to do unethical things. All right. Yes. I mean, there are cases that talk about constructive discharge. Thank you for your answer. Go ahead. So that's the first joke. And Robinson, the Supreme Court unanimously found that this Title VII, because it had and it was in a different section of the statute, but it said because the retaliation provision allows for reinstatement of a discharged employee, the statute must cover some former employees. That's right. But the difference here is, and I think it clearly does cover former employees to the extent that they are discharged, it also covers an employee, which means to me that employee was discharged while they were an employee. And it also covers employees who are demoted as an employee, who are suspended as an employee, who are threatened as an employee, who are harassed as an employee, or in any other manner discriminated against in the terms and conditions of their employment. What I'm saying is different about this language than Robinson is that we have this an employee who is discharged. It's the present tense. So, yes, an employee who is discharged and then becomes a former employee does have a cause of action under this. But an employee, she is not an employee who is threatened or harassed, which is your, where you're trying to get to. She was threatened and harassed as a former employee. So I don't, and I think our briefing has handled that particular point, and I actually wanted to address it, so I appreciate the opportunity. So I don't think that's... Well, we appreciate the opportunity to hear you. Well, I don't think that distinction actually covers this case whatsoever, because Ms. Potts is being threatened, is being harassed to this very day. But it says an employee is discharged. That's why an informer employee is covered. They were an employee when they were discharged. She was not an employee when she was harassed or threatened. See what I'm saying? I'm stuck with, I'm stuck on that, and I understand what you're saying about Robinson, but this language, which then has this an employee is, this is what creates a claim, I'm struggling with that. How do you ignore the word is? I don't think we are ignoring the word is, because is is a present tense verb. What is is? I'm not going to go there. So again, that language, that is a present tense verb that modifies other past tense verbs, but it doesn't put a time period on when, I understand the point, is discharged, but she is threatened, is harassed. Employee. An employee is discharged, so that employee who becomes a former employee by way of discharged then has a cause of action. Right, but again. It doesn't say was discharged. It says is, meaning as an employee. And our allegations are in this case is that she is threatened, she is harassed to this very day. This harassment goes to this very day. Not as an employee. That begs the question. It misses the point. Okay, I know, but the thing is, I know, because you're saying that the qualifier employee is, but that's exactly what Robinson addressed, is that Robinson used the exact same language, right? It was a present tense verb talking about employees. I don't think it did use the exact same language. It didn't have this list of an employee is, and then the qualifiers. Right, and I meant to say that it used a present tense verb, and it used the term employee. So I guess my point is. Yeah. I'm not sure they really considered the question that I'm asking you. I see where they would say that obviously some former employees are covered, because it covers discharged employees. Right. But, so I get that employee can't just mean, it can't just mean current employees, but that doesn't mean that you can't constrict it to actions that occurred to that employee while they were an employee, which is what I'm trying to do. Right. Well, and again. Counsel. Judge Moritz, my concern is a little different than that, and that is that the, as I understand the briefing, the conduct here that is being the subject of your claim occurred after the employee is no longer an employee at all. That's the part Judge Moritz notes. Now, what I'm saying is, here, as I understand, there was no conduct that occurred during the period of employment that you've identified. Maybe you could identify that for us. The conduct, the retaliatory conduct? Yes. Or the protected activity? No, not the retaliatory conduct, but the conduct that is the basis of the retaliation. So the protected activity definitely occurred outside the employment time, but so did the conduct that led to retaliation. Robinson also all occurred after the employee's employment in that case as well, and the district and the Supreme Court said, again, that the fact that this, again, going back to the very first question, the statute also has a reinstatement remedy. So we know that some former employees are protected at some level, and Robinson's teaching is that this court must go beyond simple labels, just looking at the word employer and say well, that typically just means current employee. I don't want to get you in the same situation the other lawyers had this morning. Counsel are required, please, when you ask to reserve time, to reserve it. Okay. I will reserve the rest. Thank you. Go ahead. Thank you, Your Honor. May it please the Court, Stephen Gombos for the defendant, Center for Excellence in Higher Education. I think the Court's question is focused on the language of the statute. There is nothing in the complaint, the four quarters of that complaint, that makes an allegation regarding inappropriate activity, retaliatory activity, or anything that supports this theory of FCA retaliation under 31 U.S.C. 3730. More importantly, the issue of constructive discharge came up today. I was somewhat surprised to hear counsel mention that he appears to be alleging that, because it came up before Judge Jackson. He's not saying that. I think he was just trying to. I think it was because of Judge Lucero's question. Okay. That's the way I understood it. I don't think he. In any event. He explained that she was constructively discharged, but her claim here is that she was harassed or threatened. Right. There's no claim of constructive discharge here. Right. What the parties did is enter into. I may be misspeaking, but that's what I understood in the case. Okay. If that's the case, then I have no issue with that. In any event, the parties, I think it's important that the Court focus on the person. Well, I think what Judge Moritz is saying is that I led counsel into this little bunny trail. Yeah. Get us out of here. I don't believe you. I plead not guilty. Well, Judge Lucero, I guess the point that I want to make for the record, and this was discussed at argument below in the motion to dismiss, and there was some question about constructive discharge. Right. And counsel indicated in that argument that he had not alleged it. I think there was some plea to perhaps try to allege it after the fact.  Well, that's why I asked initially whether he was asserting that the severance contract somehow extended or sought the protection of the act or extended the act somehow    and clued that discharge as the basis of further claim. In any event, exactly. And it didn't. It's a separate agreement to not disclose. When Ms. Potts voluntarily resigned, she was free to say whatever she wanted, absent a tort violation or some violation of law. She made complaints to people. My client and her met. Well, I think the use of the word voluntary is what's in fairness to counsel, and hopefully in fairness to me, that it's that use of the word voluntary that he has, I think, correctly asserts is not exactly right. It was not totally voluntary if the Wyoming Department has determined that she was forced out. I'm not – those proceedings are separate. They probably involved an unemployment claim, which she was allowed to pursue. But in any event, she separated. She wasn't fired. She wasn't terminated. She wasn't discharged. She wasn't demoted. She wasn't threatened or harassed by the four corners of her own complaint. And we believe the plain reading of 3730H1 and 2 together in particular limits an FCA retaliation claim to something that occurs during employment. And if Congress had intended differently, they would have used different language. Well, couldn't you agree that it's at least ambiguous? Because as – I mean, as Robinson says, employee cannot be read as you're reading it. It cannot be read as any current employee because then an individual who is discharged will not have a cause of action. It's that simple. So you can't read it as any current employee. You cannot imply or insert that word there. Well, I agree with that. So how do you limit it then? You're right. And that's what Robinson said. Current employee – it isn't limited to current employees. It can't be. It cannot be because you – because of the word discharge, as you accurately indicated in questioning counsel. If an employee is discharged, but de facto when they bring the claim, they're a former employee, but the action that resulted in that discharge was making a claim of – that supports an FCA retaliation claim, alerting the employer that they're doing something that violates the FCA statute as an employee that you assert after the fact when you're a former employee because you were discharged. It certainly doesn't allow to assert a claim unrelated to the time you're employed, which is what's going on here. There's certainly a lawsuit. Well, I mean, you know, if you accept that it may be ambiguous because it obviously has to cover at least some former employees, and you get to the legislative history and policy considerations, as Robinson pointed out, there's no question that anti-retaliation provisions – I don't think it matters whether it's Title VII or this case. In this situation, the whole purpose is to maintain unfettered access to statutory remedial mechanisms, and that certainly would apply equally to a former employee. Why shouldn't – why shouldn't it apply to a former employee? Why should an employer be allowed – and I understand you object to what they're saying happened here, but why wouldn't you want to protect an employee from a former employer retaliating against them? And they'd be allowed to, and they wouldn't have a cause of action if we restrict this in the way you suggest. Well, Your Honor, my first – the first response to your argument is I don't agree that the language of the FCA retaliation provision 3730 raises the same issues as the provision under Title VII. So that's the first answer. So I would suggest – In terms of just the policy, which is what I was talking about, I don't mean – you know, why isn't the policy the same? Wouldn't you be trying to protect a former employee just as you would an employee from an employer's harassing and intimidating actions? And I think – I think the statute does, consistent with the first point I made, because if you're discharged for asserting an FCA claim, you can make the claim under this statute because you were discharged. But if you're discharged and two days later they continue to harass you, either by – let's say they call your current employer or someone you'd like to work for and say, oh, let me tell you something about them, that's not protected because it's two days later? And, Your Honor, I think that's an excellent question. And here's what I would say about that. If you were to entertain expanding this language, the terms and conditions of employment are in both sections, as Judge Phillips indicated. There is no allegation in this case that Ms. Potts has been affected in the terms of her employment with my client, with whom she separated, or with respect to her ability to get a job. If you were to interpret it, and I think there's practical sense to what you're saying, if a viable FCA complaint were filed, and if by a former employee, and if you decide you don't read the statute to restrict you, and you decide that you're going to allow for a cause of action, it ought to relate to something that the employer did to take action against that employee with respect to gaining employment. And I understand that policy. Well, you're assuming that I would read that terms and conditions phrase to modify essentially the entire list of verbs. I think it does. I think it's a prepositional phrase that doesn't modify the discharge, demote, suspend, threaten, and harass. I mean, I think, I don't know what I think. You guys make some interesting arguments, you know, arguments, canons of construction that I haven't had to look at for a while. But I'm saying you could certainly look at it a different way, and you might not assume that that terms and conditions modifier applies. I'm saying I think the statute could be ambiguous, which takes us, I think, to the same policy considerations the Supreme Court considered in Robinson. And I've tried to give you a policy reason that you could still interpret this statute if you determine it's ambiguous to limit its application in terms and conditions of employment. What you have here is a suit for a breach of contract. If that suit, there's no allegation that suit was frivolous. In this case, there's an allegation that that suit is baseless. The state court of Colorado that's hearing that case can determine if that suit's appropriate or not. That's what you're saying, really, is that at the end of the day, there is a remedy, and the remedy is not retaliation under this federal act, but instead is to try to avoid this contract as against public policy or something else. What is the retaliatory act? Is it the filing of the state court complaint, or is there anything else beyond that? Well, in this case, it's interesting, because the lawsuit was filed based upon disparaging comments made to employees. In discovery in that case, this, the lawsuit, the court granted a motion to amend to include an allegation that a disparaging complaint was made to ACCSC, which is a creditor of the college. It's one line in the complaint that says that complaint was made. Same relief is requested. No new counts. No new relief. So I actually believe, for statute of limitations purposes, which I think takes me down that path. I'm not sure you're answering my question. My question is, what does Ms. Potts say your client did? Sued her. And there's nothing else about contacting future employers or anything else? No. So the sole retaliatory act is in suing to enforce the contract that she signed. Yes. Whether it's good or whether it's bad. Right. That's the retaliatory act. Yes, Your Honor. Filing that lawsuit based on the contract. What I was mentioning was that the lawsuit was amended, and what you have here is, there's no allegation that the initial lawsuit filed for making disparaging remarks violates this act. It was the amendment regarding the accrediting commission that he says triggered the right to action here. That was the only detail I was adding. I think the courts can enforce the express language of this statute. If the court declines to enforce the express language as Judge Jackson did, I think one point bears mention from the briefing. And you're right. There were a lot of canons of interpretation that I hadn't heard. My associate did a fine job researching all that. When you look at the two words he focused on to create ambiguity, threaten and harass, I think there's some argument suggesting that you can't threaten or harass a current employee. I can think of a myriad of ways you can do that. I say that because you can't... You mean former employee? You can threaten and harass a former employee. You can't discharge, demote, suspend, or discriminate in terms of employment against a former employee. Right. But the threatened and harassed that are used in this series, which I believe is all qualified by a preposition, but clearly those are things that employers can do. You threatened an FCA action, and you told me you're going to do that, hypothetically. Well, if you do that, I may take action against you. Naturally, that's in the type of sequence. Well, you really can't. You can't say that that preposition reaches back to threatened and harassed unless you read it this way. If that employee is suspended in the terms and... or is threatened in the terms and conditions of employment, then I don't think... I think every one of those words can relate to that preposition. Well, what the district court said, I don't think the district court said that. I think the district court said there are five conditions. The first two are definitely current employees. The last one is definitely a current employee. And so the middle two, we probably should assume that we're talking about one deck of cards here, and so that is as well. Well, I think you're right. I believe the way the district court analyzed it is he looked at that last prepositional phrase that we've been talking about here as a catch-all to say all these things have to relate to employment. That's how I believe Judge Jackson ruled on the matter. And I think he should affirm the judgment based on the expressed language of the statute. Thank you, Counsel. Thank you for waiting the remainder of your time. Counsel, I think you have a bit of time left. Yes. Yes, and with the last minute of my time, I'd just like to reiterate a couple of things. So we're here because the district court found the statute unambiguous. And the lesson of Robinson is that where portions of the statute clearly protect former employees because they protect against discharge and they give a reinstatement remedy, then the term employee standing alone is necessarily ambiguous, and you have to go beyond just the text of the statute to determine what Congress meant. And I think that Mr. Gombos' concession a minute ago was telling. He admits that you can threaten and harass a former employee. So you have certain sections of the statute that we know cover former employees, and then you have another section that can cover former employees. And what Robinson's lesson is is that you can't just rely on initial impressions. You have to go another step deeper and look at the policy, the context, the purpose, and all of the other interpretive tools that are available to this court to determine what that means. And just briefly to address Judge Moritz's earlier statement, Title VII's language is that it's an unlawful employment practice for an employer to discriminate against any of his employees for protected activity. It's the same use of the term of employment. No, it doesn't say that. All right. But this one does. You mean in the terms and conditions of employment? Yes. Yeah. My point was something that the statute does. We understand the argument, counsel. Counsel, we appreciate it. As I said in the previous case, we'd love to stay and talk for a good while. We cannot. The counsel are excused. The case is very well presented. We thank you all. And the case is submitted. Normally, we would take a ten-minute recess. Instead, we're taking a two-minute recess.